HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAX J. ANDERSON

Plaintiff,

v.

CITY OF BAINBRIDGE ISLAND, a municipal corporation, et al.,

Defendants.

Case No. CV09-5797RBL

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Dkt. #39]

## I. SUMMARY

This matter comes before the Court on Defendants' motion for summary judgment. Dkt. #39. The Defendant police officers seek a ruling as a matter of law that they acted reasonably in arresting Plaintiff Max Anderson. Defendants also assert that even if their actions were beyond the scope of objective reasonableness, they are entitled to qualified immunity. The City moves for dismissal of Anderson's state law assault claim, which seeks to hold the City responsible under a theory of *respondeat superior*. The Court has reviewed the parties' submissions and the motion for summary judgment is GRANTED. The reasons for the Court's order are set forth below.

ORDER
Page - 1

## II.  FACTUAL BACKGROUND

On October 28, 2007 then-16-year-old Plaintiff Max Anderson was driving home from Poulsbo to Bainbridge Island. In a rush to make his 1:00 a.m. curfew, Anderson was driving approximately 85 miles per hour on Highway 305. Dkt. #45, ¶ 7-8.  Anderson passed a parked police car, and shortly thereafter passed a van in a no-passing zone. *Id.*  Upon seeing the police car's flashing lights following him, Anderson turned off onto Day Road and the police followed. *Id.* at ¶ 9.   Anderson then pulled into an industrial park and turned off the headlights on his black 1997 Volvo. *Id.* at ¶ 10, 11.  He parked behind a trailer and hid. *Id.* at ¶ 14.

Once they saw Anderson turn into the park and turn his headlights off, Officers Richard Christopher and Guy Roche called for backup and waited for additional officers before entering the industrial park. Dkt. #41.  As they entered, the officers saw someone walking toward them and trained their spotlight on him. *Id.*  Anderson had exited his vehicle and was walking toward the police with his hands in the air and his driver's license in his right hand. Dkt. #45, ¶ 17.  According to Anderson, both officers were out of their car and both aimed their guns at his chest. *Id.* at ¶ 25, 26.  According to the officers, Officer Christopher shouted commands at Anderson and trained the spotlight on him, but never drew his gun. Dkt. #41.  Defendants agree that Officer Roche drew his gun, but claim he held it in a "low-ready" position, not pointed at Anderson's chest. Dkt. #42.

Anderson complied with the officers' orders. Dkt. #45, ¶ 27.  According to the officers, they recognized Anderson as the son of one of their fellow police officers as they were arresting him. Dkt. #41.  Officer Christopher specifically recognized Anderson at the time of arrest because he had pulled Anderson over for speeding the previous week. Dkt. #42.  Anderson contends that the officers were aware of who he was long before they pointed their guns at him, and therefore should have known he was not a dangerous suspect. Dkt. #45, ¶ 29.

The officers arrested Anderson without further incident and took him to the Bainbridge Island police

station. Dkt. #45, ¶ 29. Anderson was eventually released to his father, former Bainbridge Island police officer Scott Anderson.[1] *Id.* at 36.

Anderson does not contest the lawfulness of his arrest, but contends that the officers violated his Fourth Amendment right not to be subject to excessive force when they aimed their guns at his chest during the arrest. Dkt. #44 at 2. Anderson did not sustain any physical injuries as a result of these actions, but asserts that he feared for his life and has suffered emotional distress. Dkt. #45, ¶ 28. Anderson claims the officers aiming guns at him was unreasonable under the circumstances.

### III. DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

---

[1]Scott Anderson was an active Bainbridge Island police officer at the time of this incident. His employment did not end until January 2008. Dkt. #46, ¶ 3.

ORDER
Page - 3

B. <u>Excessive Force</u>

Defendants move for summary judgment on the basis that their actions were objectively reasonable under the circumstances. Dkt. #39. Anderson argues that pointing guns at him was excessive, and thus a violation of his Fourth Amendment rights. Dkt. #44. Alternatively, Defendants assert that even if a constitutional violation occurred, they are nevertheless entitled to qualified immunity. Dkt. #39. Anderson claims that pointing but not firing guns at a suspect is excessive force if the suspect does not pose an immediate safety threat. Dkt. #44 at 2.

Anderson argues that three factual disputes preclude summary judgment. The first is whether the officers recognized Anderson before aiming their guns at him. *Id.* at 15. The area was well-lit with the officers' spotlight and Anderson states that the officers had met him multiple times. *Id.* Anderson also claims that officers should have recognized his black Volvo. Dkt. #46 at 3.

The second issue is whether the officers pointed their guns at Anderson, rather than holding them in low-ready position. Dkt. #44 at 16. Finally, Anderson argues there is a factual issue as to whether both officers pointed their guns at Anderson, as he claims, or whether only Officer Roche drew his gun and held it at low-ready, as the officers claim. *Id.* at 17. Defendants argue that none of these issues is material, and even when all the facts are construed in Anderson's favor, they are entitled to judgment as a matter of law.

The Fourth Amendment's "objective reasonableness" standard governs § 1983 excessive force claims. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Reasonableness is viewed from the perspective of the officer at the time the action occurred, "rather than with the 20/20 vision of hindsight." *Id.* at 396. To determine reasonableness, one must remember "that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Determining whether force is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." *Id.* at 396 (internal quotations and citations omitted). The *Graham* Court outlined three factors for determining the reasonableness of the force: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to officers or others; and (3) whether the suspect was evading arrest. *Id.*

The force used against Anderson was minimal; it was a momentary *threat* of deadly force. A determination of force "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 397. Even viewed in the light most favorable to Anderson, the facts establish only that both officers drew their guns and pointed them at Anderson, until they identified him and ensured he was not a safety threat.

Anderson relies on *Robinson v. Solano County*, 278 F.3d 1007, 1010 (9th Cir. 2002), but *Robinson* does not support Anderson's claims. In *Robinson,* the plaintiff's neighbor called the police after the plaintiff shot two of the neighbor's dogs, which were attacking the plaintiff's livestock. *Robinson*, 278 F.3d at 1010. When the officers arrived, the plaintiff walked down his sidewalk to meet them. After the plaintiff had walked to within six feet of them, one officer aimed a gun directly at the plaintiff's head and another officer aimed his gun generally at plaintiff. *Id*. The court held that the plaintiff was acting peacefully and no other "dangerous or exigent circumstances" were apparent. *Id.* at 1014. Based on the Supreme Court's then-recent decision in *Katz*, the Ninth Circuit held that pointing a gun constituted excessive force, but that the officers were entitled to qualified immunity because the law had not been clearly established. *Id.* Ultimately, the court affirmed summary judgment against the officers for the excessive force claim based on qualified immunity, but reversed and remanded the state law claims against the city and the officers.[2] *Id. Robinson*'s

---

[2]Judge Fernandez, joined by Judges Rymer and Nelson, concurred in the result only, stating: "Although I agree that the officers are entitled to qualified immunity, I do so because, in my view, there was no use of excessive force. My reason is quite simple. I do not believe that an officer who points a gun while making an otherwise proper seizure of a suspect can be found to have violated the Fourth Amendment by

ORDER
Page - 5

fact pattern is entirely dissimilar to Anderson and does not support Anderson's claims. An analysis under *Graham* is necessary.

The first *Graham* factor asks about the severity of the crime. It is a class C felony in Washington State to refuse to immediately stop one's car, and drive recklessly in order to elude pursuing police. RCW 46.61.024(1).[3] Anderson admits that he was speeding, passed illegally in a no-passing zone, and intentionally drove away from the police. Dkt. #40, Dep. of Max Anderson at 10-11. Anderson further admits he turned off his headlights "[s]o that [the police] wouldn't see me when I turned." *Id.* at 17. Officers are expected to make "split-second judgments" in "rapidly evolving" circumstances. *Graham*, 490 U.S. at 396-97. Based on Anderson's actions, the police had a cause for concern as a matter of law.

This cause for concern bleeds directly into the second factor in the *Graham* test: whether the suspect posed a threat to police officers or others. This has been noted as the most important factor. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Anderson again relies on *Robinson* for the proposition that like Robinson, he did not pose an immediate safety threat. But in *Robinson*, the exigent circumstances that suggested danger were notably absent, which is not the case here. Anderson was driving recklessly, attempting to elude police officers, and without headlights in a dark, commercial park. Anderson claims that officers saw that he was "apparently unarmed" when he came forward. Dkt. #44 at 12. But "apparently unarmed" is not enough to establish that the force used was excessive. Anderson's prior actions were a threat to others as a matter of law.

---

using excessive force upon the suspect, when no force whatsoever has been applied." *Robinson*, 278 F.3d at 1017 (Fernandez, J., concurring).

[3]The full text of the statute reads: "Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens." RCW 46.61.024(1).

Anderson also cites *Smith v. Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) as support for his claim that he was not an immediate safety threat because he did not physically or verbally protest his arrest. In *Smith*, Smith's wife had called the police after a domestic dispute. *Id.* at 693. She informed officers that Smith had no weapons and no weapons were in the house. *Id.* Smith later refused to comply with the officers' orders and continually shouted expletives at the police. *Id.* at 702. The Ninth Circuit reversed the District Court's grant of summary judgment, holding that a rational jury could find that Smith did not pose an immediate threat since there was no evidence to suggest Smith was armed and he had not made any threats toward the officers or anyone else. *Id.*

The facts of *Smith* are distinguishable from Anderson's situation. The police officers in *Smith* had no factual basis to believe Smith might be armed or otherwise dangerous. This is not true in the instant case. To ensure safety, officers must be sure a suspect is not armed. Officers may use force "'when a strong government interest *compels* the employment of such force'." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003), *quoting Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001). Anderson came forward wearing a t-shirt and jeans and with his hands in the air, but that does not preclude the possibility that a weapon was somewhere on his person. Unlike *Smith*, no one had informed the officers that Anderson was not armed. Although Anderson was willingly submitting to the police at this point, officers have a duty to ensure the safety of themselves and everyone around them. Ensuring safety is a strong governmental interest.

Finally, the *Graham* Court instructs an inquiry into whether the suspect is evading arrest. Anderson argues that since he willingly came forward, with his hands in the air, and complied with all orders from the officers, this shows that he was not resisting arrest. Anderson also asserts that the arrest occurred after "flight" from the officers, and thus he was not evading arrest. It is true that Anderson's original flight from the officers was not an effort to resist arrest, per se, but it was clearly an effort to evade police. Indeed, by attempting to avoid the officers, Anderson gave the officers probable cause to arrest him.

Anderson relies on *Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994) as support for his claim that he was not actively evading arrest. In *Chew*, the court noted that a defendant hiding from police in a scrapyard was not technically avoiding arrest since his flight had temporarily terminated. *Chew*, 27 F.3d at 1442. The court stated that Chew did not resist at the time of arrest and the officers had no reason to believe he would. *Id.* Despite this, the factor still weighed slightly in favor of the officers. *Id.*

However, *Chew* was hiding from police in a scrapyard and was discovered when the officers' dog found him and began to attack him. The dog dragged Chew up to ten feet from his hiding place, bit him multiple times, and "nearly severed" Chew's arm. *Id.* at 1441. Anderson's factual scenario is not analogous to *Chew*. When Anderson came out from hiding, it was not because a dog had forced him to do so. Although Anderson's actions may have been sincere, the police had no way of knowing whether Anderson was armed, dangerous, under the influence, or a threat in some other way. *Chew* does not support Anderson's assertions.

Anderson argues that alternative means could have been used to apprehend him. He asserts that the officers simply could have dictated instructions to him and never pulled their weapons. Alternative means, however, is merely a factor that may be considered alongside the three *Graham* factors. *Smith*, 394 F.3d at 703. Indeed, "the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Even when an officer is mistaken in his or her belief that a suspect poses danger, if the belief was reasonable, then the officer is justified in using force. *See Saucier*, 533 U.S. at 205.

It was reasonable for the officers in this situation to draw their guns in an effort to ensure the safety of everyone. "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross,* 932 F.2d 842, 846 (9th Cir. 1991). Anderson did not see the guns again when he turned around and was subsequently placed in the police cruiser. Dkt. #40, Dep. of Max Anderson at 11. No further force was

ORDER
Page - 8

used. Anderson is unable to show that, in light of all the surrounding circumstances, the officers acted unreasonably as a matter of law.

C. <u>Qualified Immunity Standard</u>

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). In analyzing a qualified immunity defense, the Court must determine whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.*

The Supreme Court recently held "that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established. The burden is on the defendant to prove that his or her actions were reasonable given the circumstances. *Doe v. Petaluma City Sch. Dist.,* 54 F.3d 1447, 1459 (9th Cir. 1995).

Because the officers' actions were reasonable as a matter of law, there was no constitutional violation here. Even if the officers' actions were arguably unreasonable under the circumstances, Anderson has not and cannot show that the officers' actions violated a "clearly established" standard, and that a reasonable officer would have known of that standard. Anderson's reliance on *Robinson* for the proposition that there is a clearly

established law to this effect is misplaced, as the facts of the instant case are drastically different than the facts of the *Robinson* case. Defendants are entitled to qualified immunity as a matter of law.

D.   State Law Assault Claim and *Respondeat Superior*

Anderson also alleges a state law assault claim against the City of Bainbridge, seeking to hold it liable for the actions of the Defendants under a theory of *respondeat superior*. Dkt. #1, ¶ 53. Vicarious liability is not applicable to §1983 claims. *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1948 (2009). Anderson thus seeks to hold the City liable for assault under state law. However, no assault occurred. Just as drawing a gun and pointing it at Anderson is not excessive force given the circumstances in the instant case, it is also not assault. As a matter of law, a supervisor may not be held liable for an assault that did not actually occur.

While an agent's qualified immunity does not necessarily establish a defense for a principal, it may under certain circumstances. *See Savage v. State*, 127 Wn.2d 434, 439 (1995). The Restatement (Second) of Agency, which the *Savage* court relied on, states that a principal has a defense if "the agent did not fall below the duty of care owed by the principal to the third person." *Id.*, *quoting* Restatement (Second) of Agency § 217 (1958). Similarly, Washington courts have extended qualified immunity from agents to principals when the State committed no acts of its own and the only theory available was *respondeat superior*. *Babcock v. State*, 116 Wn.2d 596, 621 (1991), *citing Creelmen v. Svenning*, 67 Wn.2d 882 (1966); *Guffey v. State*, 103 Wn.2d 144 (1984). Neither the officers nor the City has committed assault, and accordingly, there is no liability.

There is no claim against the City as a matter of law, and it is therefore dismissed.

## IV. CONCLUSION AND ORDER

The Defendants' actions did not violate Anderson's constitutional rights as a matter of law, and even if they did, the Defendants are entitled to qualified immunity. Defendant's motion for summary judgment

//
//
//
//
//

ORDER
Page - 10

(Dkt. #39) is GRANTED, and all Anderson's claims against the officers and the City are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE